[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON RESPONDENT'S REQUEST TO VACATE THE COURT'S DECISION OF SEPTEMBER 19, 2000 ON THE PETITIONER'S MOTION TO CONVERSE WITH LEGAL COUNSEL WHO IS A FELLOW PRISONER
On September 19, 2000 this Court granted, ex parte, the Petitioner's Motion to "Converse with Legal Counsel who is a Fellow Prisoner" as follows:
 "Granted to permit inter-prison mail only with Michael Scatena. ILAP does not totally deny assistance. See next-to-last paragraph on page 2 of ILAP letter."
By motion dated September 29, 2000 the Respondent has requested that the Court vacate said decision. A hearing was held on the Respondent's motion on October 23, 2000 at Superior Court in the Judicial District of Tolland at Rockville with the Petitioner, who is currently incarcerated in Wallen's Ridge Prison in Virginia, communicating with the Court and the Respondent and the witnesses by video conferencing.
This Court previously denied the Petitioner's request to order the Respondent to provide the Petitioner with the copy of the "White Man's Bible" which had been sent to him, based upon the inflammatory nature of the document which prison officials claimed was sufficiently inflammatory to endanger security at the institution in which the Petitioner was incarcerated. The Court also ordered the Respondent to redact inflammatory portions of other materials from the Church of the Creator that were deemed to be inflammatory. The Respondent, after a review of the materials, claimed that such redaction would result in only ten percent of the document surviving. The Court then vacated its prior ruling thereby relieving the Respondent of the necessity of redacting the documents and permitting the Respondent to use his judgment as to whether or not these documents should be provided to the Petitioner based upon security concerns.
The Petitioner can easily be called a violent individual. He is presently serving two consecutive life sentences for murder, the second murder occurring in his cell when he strangled his cellmate to death. When the Respondent denied the Petitioner the White Man's Bible prior to CT Page 13147 the Petitioner seeking relief from this Court, the Petitioner used an object to slash the Respondent's face. Therefore, it is understandable that the Respondent has concerns for security regarding the Petitioner.
At the hearing on this matter on October 23, 2000, testimony was received from Major Thomas Coates of Northern Correctional Institution in Somers, Connecticut, a maximum-security facility in which the Petitioner had been confined prior to his transfer to Virginia. The Court found Major Coates to be a credible, knowledgeable and honest witness. The Court believes his testimony that allowing the Petitioner to communicate by mail with Michael Scatena would have a serious negative effect on the security of the Northern Correctional Institution. The following items were admitted into evidence during the hearing:
 1. Respondent's Exhibit A which is a letter dated September 8, 2000 to the Petitioner's mother in which the Petitioner says that he was cut off by the Church of the Creator because he claims that it is a non-violent religious group and by slashing the Respondent he violated its rules.
 2. Respondent's Exhibit B contains an incident report dated August 8, 2000, five days after the Petitioner attacked the Respondent, reporting that prison authorities had confiscated from the Petitioner material that they thought might be related to the assault. These items included three cartoons attached hereto as Schedule A which were racist and anti-Semitic particularly against Warden Myers one of which shows the Petitioner choking Warden Myers.
 3. Respondent's Exhibit C is a letter to "Reverend" Hale of the Church of the Creator in which the Petitioner criticizes the Respondent for being Jewish, the Christian Reverend as being a "Nigger" and another individual as being a "Catholic Deacon." He ends his letter with the code "RAHOWA!!" which is an acronym for "Racial Holy War."
From the Petition for Habeas Corpus of Michael Scatena the Court is aware that he is also a member of the Church of the Creator and espouses anti-Semitic, antiblack and anti-Catholic principles of the Church of the Creator. The Petitioner claims that Michael Scatena is his "legal counsel". Mr. Scatena is not a member of the Bar of any state and cannot CT Page 13148 act as legal counsel to the Petitioner. There was also testimony from Major Coates that when Mr. Scatena was being transferred for an interview, he provided prison officials with a copy of the White Man's Bible.
The Court finds from the totality of the evidence that communication between the Petitioner and Michael Scatena would be detrimental to the security of the correctional institutions involved. Prohibiting such communication is related to legitimate penological objectives, namely, maintaining security at the correctional institutions. This Court cannot micromanage the Respondent's actions in determining what are legitimate security concerns. It can determine, as it does here, that such communication between the Petitioner and Michael Scatena for the reasonsstated are detrimental to the security of the institutions.
This prohibition of inmate-to-inmate communication is reasonably related to legitimate penological interests and is, under Turner v.Safely, 482 U.S. 78 (1987), not a violation of constitutional rights. Major Coates' testimony and the exhibits mentioned clearly established that prohibiting direct inmate-to-inmate communication is required for inmate safety and institutional security which is a legitimate penological interest and goal.
Further, in order for the Petitioner to prevail, he must show that no reasonable method exists for him to have contact with legal counsel. As previously noted in prior decisions regarding this Petitioner, the Court has reviewed the June 9, 2000 letter from Inmates' Legal Assistance Program to the Petitioner in which it is stated:
 "If you want assistance from ILAP in your case, please provide copies of your complaint and the defendants' responses, along with any other materials related to your claim for review. This office will evaluate your claims and then will advise you accordingly."
The letter also indicates that it is doubtful that the Petitioner's claims are valid for basically the same reasons stated in this decision. However, the ILAP showed that it was still open to reviewing Petitioner's materials in order to determine whether it should assist the Petitioner. Therefore, the Petitioner is not without an alternative for legal assistance. The Commissioner of Corrections has established a procedure pursuant to a contract with ILAP which permits inmates to communicate indirectly with other inmates. ILAP monitors the mail it receives from inmates to insure that it truly relates to legal matters, and then funnels it to other inmates. Outgoing mail to ILAP is treated as privileged. This protocol substantially permits the communications that CT Page 13149 the Petitioner seeks while also addressing the security concerns of the Commissioner of Corrections to his satisfaction. This alternative arrangement is available to the Petitioner, and, therefore, he has failed to meet his burden of showing no alternative relief available to him. SeeTurner v. Safely, supra.
For the foregoing reasons, the Respondent's request that this Court vacate its decision on the Petitioner's "Motion to Converse with Legal Counsel who is a Fellow Prisoner" is granted, and the decision of September 19, 2000 is hereby vacated.
Rittenband, JTR
[EDITORS' NOTE: THE INCIDENT REPORT IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: THE ATTACHMENT IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: THE LETTER IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: THE ATTACHMENT IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: THE LETTER IS ELECTRONICALLY NON-TRANSFERRABLE.]
Racist CodeA=1 B=2 C or K=3 D=4 E=5 F=6 G=7 I=9
99 HH Heil Hitler. Used as a greeting by nearly all racists.18 AH Adolf Hitler.39 CI Christian Identity.93 IC Indentity Christianity.19 AI Aryan Identity.83 HK aken Kreuz. Gernam for "Swastika".14 14 Words "We Must Secure The Existence Of Our People And A Future For White Children". Used as a greeting by most avowed racists, a phrase coined by David Lane, member of The Order.
Hate Acryonyms
RAHOWA — RAcial HOly WAr CT Page 13150AKIA — A Klansman I AmCIS — Christian Indentity SkinheadSWP — Supreme White PowerZOG — Zionist Occupational GovernmentSKIN — SKINheadWOOD — PeckerWOODWAR — White Aryan ResistanceWIGGER — White nIGGER, a white drug addictBOOT PARTY — When a group of skinheads commit a violent assualtSCHOOLING — When older skinheads attack younger skinheads to "teach them a lesson"COTC — Church Of The Creator
[EDITORS' NOTE: THE SYMBOLS IS ELECTRONICALLY NON-TRANSFERRABLE.]
ARYAN FIST — Symbol for White Power. The A in the center of the fist is equated with the word "Aryan."
CRUCIFIED SKINHEAD — The oldest of all Skinhead tatoos. Both racist and non-racist Skinheads use this tattoo to symbolize the crucifixion of the working class.
CHURCH OF THE CREATOR — Worn to show affiliation with the Illinois-based White Supremacist organization (see page 4).
PECKERWOOD — Displaying this tattoo indicates 100% commitment this group's ideology (see page 9).
Runic: The Skinhead's Alphabet
The `Runic' alphabet was common to the Norse, Teutonic and Celtic peoples. It has been embraced by white supremacists who believe that these ancient groups were the forebearers of the white race.
[EDITORS' NOTE: THE SYMBOLS IS ELECTRONICALLY NON-TRANSFERRABLE.]